UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE ESTATE OF KEVIN BROWN, et al., <br> Plaintiffs, <br> v. <br> MICHAEL LAMBERT, *et al.*, <br> Defendants. | Case No.: 15-CV-1583-DMS-WVG <br><br> **ORDER ON DISCOVERY DISPUTE REGARDING DISCOVERABILITY OF DEFENDANTS' REINSURANCE POLICY** |

**I.    INTRODUCTION**

Pending before the Court is the Parties' supplemental briefing on the discoverability of Defendants' reinsurance policy as maintained with third-party entity, Wesco/Amtrust, through CSAC-EIA, Defendant City of San Diego's reinsurer. (Doc. Nos. 248, 249.) Plaintiffs argue the reinsurance policy requires production; Defendants disagree. The Parties timely filed their supplemental briefing pursuant to the Court's June 23, 2020 Order following a discovery conference on the matter on that same day. (Doc. No. 247.) The dispute is now ripe for this Court's adjudication. Having reviewed and considered the Parties' respective positions and supporting legal authority, the Court GRANTS Plaintiffs' request for Defendants' production of their reinsurance policy and ORDERS Defendants

to produce the policy no later than Friday, July 17, 2020. The Court explains below.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The following facts are undisputed by the Parties and relevant to this discovery issue. At the inception of fact discovery, Defendants represented that the City of San Diego was self-insured. Accordingly, Defendants did not provide insurance information or tender any insurance related documents to Plaintiffs at any time during the Parties' exchange of initial disclosures, fact discovery, or any of the pre-trial proceedings in this matter. Trial began on February 3, 2020 and concluded on February 18, 2020. (Doc. Nos. 160, 183.) It resulted in a jury verdict for Plaintiffs in an amount exceeding $6 million, constituting compensatory and punitive damages plus post-judgment interest and attorney fees and costs. (Doc. No. 194.) Since then, Defendants have filed various post-trial motions, including an Ex Parte Motion to Stay Enforcement of Judgment and for Relief from Supersedeas Bond ("Ex Parte Motion") (Doc. No. 208), a Motion for New Trial (Doc. No. 213), and a Renewed Motion for Judgment as a Matter of Law (Doc. No. 214). As of May 1, 2020, Plaintiffs' Motion for Attorney Fees and Costs remains pending alongside Defendants' three motions. (Doc. No. 225.)

Defendants' Ex Parte Motion and related Reply to Plaintiffs' Opposition (Doc. No. 211) are relevant here, specifically the Declarations of Matthew Bartholow ("Bartholow Declaration") and Claudia Castillo del Muro ("Castillo del Muro Declaration") in support of same. (Doc. Nos. 208-2; 211-2.) Respectively, the Bartholow Declaration represents "for judgments above $3,000,000, the City has multiple re-insurance policies providing excess layers of coverage up to a total of $50,000,000" and "for a $10,000,000 judgment, stemming from an incident that occurred in 2014, the City would pay the judgment and then be reimbursed by the CSAC-Excess Insurance Authority with funding from Wesco Insurance Company." (*Id.*, 2:5-9.) The Castillo del Muro Declaration adds, "Once a judgment is paid using the Public Liability Fund ("PLF"), any portion of the judgment amount over $3 million is reimbursed to the fund by the City's reinsurance carriers." (Doc. No. 211-2, 2:21-24.) The Declaration then illustrates the point: "If the City uses General

Funds to pay a judgment, any amount over $3 million is reimbursed by the City's reinsurance carriers." (*Id.*)

By respectively filing the Bartholow and Castillo Del Muro Declarations on March 25, 2020 and March 31, 2020. (Doc. Nos. 208, 211), Defendants, for the first time in this longstanding litigation, disclosed their retention of a reinsurance policy that would apply to any judgment issued here. In response to Defendants' post-trial disclosure, Plaintiffs requested production of the reinsurance policy, counsel for the Parties subsequently met and conferred on the matter, and the Parties ultimately sought this Court's intervention given Defendants' ongoing failure and/or inability to produce the policy. On June 23, 2020, this Court convened a video discovery conference on the dispute and ordered the Parties to file the supplemental briefing, which informs the basis of this Order. (Doc. No. 247.)

In short, Plaintiffs are convinced Rule 26(a) of the Federal Rules of Civil Procedure obligates Defendants to produce their reinsurance policy consistent with routine initial disclosures and a party's continuing duty to supplement their relevant discovery under Rule 26(e). Plaintiffs assert that Defendants doubly erred by failing to make the initial disclosure and then further delaying disclosure until trial concluded and post-trial proceedings were underway. Defendants reject Plaintiffs' stance and wholly dispute they bear any burden to produce the reinsurance policy under Rule 26 or otherwise. Further, Defendants posit that, while they consent to this Court adjudicating this discovery dispute, the Court in fact does not have jurisdiction over this matter because the Action is in post-trial proceedings. The Court addresses the jurisdictional inquiry and the discoverability issue in turn.

### III.  DISCUSSION

#### a. The Court Has Jurisdiction Over This Post-Trial Discovery Dispute

Section 636 of Title 28 of the United States Code ("Section 636") provides for the scope of a magistrate judge's authority. 28 U.S.C. § 636; *Ransom v. Herrera*, 2017 WL 6425031, at *3 (E.D. Cal., Dec. 18, 2017). Under Section 636, a district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the court, except [certain enumerated motions]." 28 U.S.C. § 636(b)(1)(A); *see also Denny v.*

*Ford Motor Co.*, 146 F.R.D. 52 (N.D.N.Y.1993) (citing to same and concluding magistrate judge had authority under Section 636(b)(3) to decide post-verdict discovery motion to take deposition). Coloring Section 636 is Rule 72(a) of the Federal Rules of Civil Procedure, which provides that a magistrate judge has authority to hear matters that are not dispositive of a party's claim or defense. Fed. R. Civ. Proc. 72(a). Necessarily, these include discovery motions. *Germaine-McIver v. County of Orange*, 2018 WL 6266525, at *1 (C.D. Cal., Oct. 25, 2018); *Bhan v. NME Hospitals, Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991); *Hoar v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) ("Matters concerning discovery generally are considered 'non-dispositive' of the litigation"); *Hutchinson v. Pfeil*, 105 F.3d 562 (10th Cir. 1997) (same as *Hoar*). Local Civil Rule 69.1(b) finesses these foundational principles and governs proceedings to enforce judgments. The Rule expressly states: "All other motions concerning execution of a judgment must be made to the assigned district judge, unless the motion relates to the post-judgment discovery, in which case the motion *must* be made to the assigned magistrate judge." Civ. L. R. 69.1(b).

  Taken together, the above rules affirm that this Court may properly adjudicate the Parties' instant discovery dispute. The nature of this dispute is non-dispositive, namely because none of Plaintiffs' claims or Defendants' affirmative defenses hinge upon Defendants' reinsurance policy's production or even its entry into evidence. Defendants mistakenly fixate on the timing of this dispute in arguing that, because the dispute manifested post-trial, the Court lacks the ability to hear and resolve the matter. Not so, and certainly not because of Defendants' self-imposed delay in disclosing the existence of their reinsurance policy.

  Moreover, notwithstanding the above authority, "under Section 636(b)(3), the court may assign to magistrate judges 'such additional duties as are not inconsistent with the Constitution and laws of the United States.'" *In re LeFande*, 297 F. Supp. 3d 1 (D.D.C. 2018) (quoting *Wright, Miller & Marcus*, *aff'd*, 919 F.3d 554 (D.C. Cir. 2019)). This authority extends to post-trial matters comparable to the pretrial matters regularly assigned to magistrate judges for decision. *Id.* ("In this case, the issue is management of post-trial

discovery, which is comparable to pretrial discovery matters routinely handled by magistrate judges, and so within the authority for reference"); *District Title v. Warren*, 265 F. Supp. 3d 17 (D.D.C. 2017) ("Resolving a matter of first impression in this district, the court would hold that a magistrate judge's order in regard to post-judgment discovery is also within the magistrate judge's authority and subject to review only for clear error"); see also *Maisonville v. F2 America, Inc.*, 902 F.2d 746 (9th Cir. 1990) (The magistrate's post-settlement imposition of sanctions under Rule 11 for filing a frivolous motion to reconsider a discovery ruling was a pretrial matter within § 636(b)(1)).

Here, Judge Sabraw referred the instant post-trial discovery dispute to this Court for resolution[1]. For this reason alone, given that the case has not closed and final judgment has not been entered, Judge Sabraw has jurisdiction to so direct. *Peretz v. United States, 501 U.S.*, 923, 111 S. Ct. 2661 (1991) (generality of "additional duties" under Section 636 indicates intention to confer onto federal judges "significant leeway" in improving efficiency of judicial process). Separate and apart from this circumstance, Local Civil Rule 69.1(b) makes clear that post-judgment discovery matters "must" be presented to the "assigned magistrate judge." The Local Rule's language is unequivocal that the matter is properly before this Court. Underscoring the point is Defendants' citations to two Ninth Circuit decisions offer no legal authority supporting the contrary: *Estate of Conners'* holding that a magistrate judge could not adjudicate a post-judgment motion for attorney's fees is consistent with the above analysis. Similarly, the *Columbia Records Productions'* decision does nothing to vindicate Defendants' jurisdictional dispute because the Ninth Circuit affirmed the district judge's decision that a magistrate judge's order assigning assets constituted a dispositive motion in violation of Section 636. See *Estate of Conners*, 6 F.3d 656, 659 (9th Cir. 1993); *Columbia Record Productions v. Hot Wax Records, Inc.* 966 F.2d 515, 516 (9th Cir. 1992).

---

[1] This Court has notified Judge Sabraw of this post-trial discovery dispute. Having considered the matter, Judge Sabraw has referred the dispute to this Court for adjudication.

Equally significant, "while the Ninth Circuit has not directly addressed the [post-judgment discovery] issue, several circuits have held that regardless of whether enforcement proceedings are referred under § 636(b)(1)(B) (specifying a report and recommendation) or § 636(b)(3) (authorizing referral of 'additional duties'), the parties are entitled to de novo review by the district court." *Strong v. U.S.*, 57 F.Supp.2d 908, 911 (N.D. Cal. June 22, 1999) (citing 28 U.S.C. 636(b)(1)(B)); *Denny*, *supra*, 146 F.R.D. at 52). Should Defendants resurrect their jurisdictional concerns over this dispute, they may seek Judge Sabraw's review of this Court's Order in Judge Sabraw's capacity as the district judge presiding over this litigation.

### b. Defendants' Reinsurance Policy Is Subject to Disclosure under Rule 26 of the Federal Rules of Civil Procedure

Rule 26 of the Federal Rules of Civil Procedure governs this dispute. In relevant part, the Rule provides: "… a party must, without awaiting a discovery request, provide to the other parties: … (iv) for inspection and copying as under Rule 34, any insurance agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment." Fed. R. Civ. Proc. 26(a)(1)(iv); *Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 270 F.R.D. 141, 142 (E.D.N.Y. 2010) (Rule 26(a)(1)(A)(iv) is "absolute" and "does not require any showing of relevance"); *Ivy Hotel San Diego, LLC v. Houston Cas. Co.*, 2011 WL 13240367, at *5 (S.D. Cal. Oct. 20, 2011) ("Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), reinsurance agreements are specifically subject to disclosure"). More broadly, the Advisory Committee Notes to Rule 26 provide that "the Court has the authority to order the exchange of information in managing the action pursuant to its Rule 16 authority." *Id.* (citing Advisory Committee Notes to 1993 Amendment to Federal Rules of Civil Procedure regarding Rule 26(a)) ("The enumeration in Rule 26(a) of items to be disclosed does not prevent a court from requiring by order or local rule that the parties disclose additional information without a discovery request"); *see also Ransom*, *supra*, 2017 WL 6425031, at *3.

The vast majority of cases analyzing the discoverability of reinsurance agreements, rather than documents related to or arising from reinsurance agreements, favors the disclosure of Defendants' reinsurance policy here. To that end, the *National Union Fire Insurance* decision appears to be the birthplace of all other cases drawing the same conclusion. In that case, the court found the relevant reinsurance policy was discoverable and fell within the ambit of Rule 26. In so deciding, the court carefully examined the nature of reinsurance, weighing its function and purpose to conclude that reinsurance policies constitute the very insurance policies contemplated by Rule 26(a)(1)(iv):

> Reinsurers ("person[s] carrying on an insurance business") are Insurers' own insurers. If Insurers are held liable under the Policies, they will turn to their reinsurers for partial indemnification, as provided in the reinsurance agreements, for any "payments made to satisfy the judgment."
>
> Insurers contend their reinsurance agreements are not "insurance agreements" under Rule 26(b)(2). True enough, reinsurance agreements are a special breed of insurance policy. Reinsurance is (13A Appleman, Insurance Law and Practice § 7681, at 480 (1976)):
>
>> the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium, in which the liability of the reinsurer is solely to the reinsured, which is the ceding company, and in which contract the ceding company retains all contact with the original insured, and handles all matters prior to and subsequent to loss.
>
> But the English language remains the same: Reinsurers "carry[ ] on an insurance business" and "may be liable ... to indemnify [Insurers] for payments made to satisfy the judgment" that Movants hope to obtain. Rule 26(b)(2) does not require that a party's insurer be directly liable to the other party. It is totally irrelevant that the reinsurers would pay Insurers and not the defendants and that Movants cannot directly sue the reinsurers.

*National Union Fire Ins. Co. of Pittsburgh, Pa. v. Continental Illinois Corp.*, 116 F.R.D. 78, 84 (N.D. Ill. 1987). Numerous courts across the country have adopted *National Union Fire Insurance*'s analysis and held in favor of disclosure of reinsurance policies pursuant to Rule 26(a)(1)(iv). *See U.S. Fire Ins. Co. v. Bunge North America, Inc.*, 244 F.R.D. 638,

642 (D. Kan. 2007) ("the fact that reinsurers would pay the Insurers and not the insured directly is irrelevant, and such an argument is disingenuous in light of the fact that the same usually holds true for regular insurance policies, which are undoubtedly subject to the rule"); *Certain Underwriters at Lloyd's v. National Railroad Passenger Corporation*, 2016 WL 2858815, at *15 (E.D.N.Y., May 16, 2016) ("Most federal courts across the country that have examined this issue, including at least one within this district, have determined that the reference in Rule 26(a)(1)(A)(iv) to 'any insurance agreement' includes reinsurance agreements"); *Suffolk Fed. Credit Union v. Cumis Ins. Soc., Inc.*, 270 F.R.D. 141, 142 (E.D.N.Y., Oct. 19, 2010) ("Although case law is sparse within the Second Circuit, the few cases to consider the issue have determined that reinsurance information is indeed discoverable"); *Century Surety Company v. Smith*, 2014 WL 7666061, at *3 (D. Colo., Jan. 21, 2014) ; *First Horizon Nat'l Corp. v. Certain Underwriters at Lloyd's*, 2013 WL 11090763, at *8 (W.D. Tenn. Feb. 27, 2013);  *Isilon Sys., Inc. v. Twin City Fire Ins. Co.*, 2012 WL 503852, at *3 (W.D. Wash. Feb. 15, 2012); *Country Life Ins. Co. v. St. Paul Surplus Lines Ins. Co.*, 2005 WL 3690565, at *10 (C.D. Ill. Jan. 31, 2005); *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, 159 F.R.D. 502, 504 (N.D. Ill. Jan. 31, 1995).

*Ivy Hotel* is the most recent opinion within the Southern District Court that grapples with the discoverability of reinsurance policies. In relevant part, the case holds that Rule 26 unequivocally requires the disclosure of a reinsurance policy during the initial disclosures phase of litigation: "The advisory committee note to the 1970 Amendment explains the policy reasons favoring disclosure of insurance coverage. The note states that '[d]isclosure of insurance coverage will enable counsel for both sides to make the same realistic appraisal of the case, so that settlement and litigation strategy are based on knowledge and not speculation.' Fed.R.Civ.P. 26(b)(2) advisory committee note 1970." *Ivy Hotel San Diego, LLC*, *supra*, 2011 WL 13240367, at *5 (*citing Nat'l Union Fire Ins. Co. of Pitt.*, 116 F.RD. at 85 n. 15 and without limiting finding to Parties' *pre*-trial settlement and litigation efforts). The Court determined that, under the plain language of

8

15-CV-1583-DMS-WVG

the Rule and the related advisory committee notes, "Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), reinsurance agreements are specifically subject to disclosure" and, accordingly, "copies of reinsurance policies must be provided." *Id*.

The legal authority Defendants cite in support of their argument to the contrary is unconvincing for a number of reasons. First, Defendants heavy handedly rely upon the California state court case, *Catholic Mut. Relief Soc'y v. Superior Court*, 42 Cal. 4th 358 (2007), to suggest that this District Court must set aside the Federal Rules of Civil Procedure governing this dispute in favor of non-disclosure of Defendants' reinsurance policy. But in doing so, Defendants entirely fail to make any semblance of an *Erie* argument, which would be necessary to advance their position. Regardless, this action arises under federal question jurisdiction and there is no *Erie* issue as to any of the state law claims arising under the Court's exercise of supplemental jurisdiction over the state-based claims. *Sonner v. Premier Nutrition Corporation*, 2020 WL 3263043, at *3 (9th Cir., June 17, 2020) ("Under the doctrine first prescribed in *Erie*, federal courts exercising *diversity* jurisdiction must follow state substantive law and federal procedural law when adjudicating state law claims") (citing *Hanna v. Plumer*, 380 U.S. 460, 465, (1965)). This is precisely because Plaintiffs seek the production of the reinsurance policy not for proving up their state law claims or undercutting Defendants' affirmative defenses arising under the state law claims, but rather to put forth a reasonable settlement demand post-trial- at a time when the jury has already decided each of Plaintiffs' claims, including the state law claims. These circumstances cement that there can be no issue arising under *Erie* here, such that the Court must even consider replacing the applicable Federal Rules of Civil Procedure with state-based case law.

Defendants further miss the mark. While being bound by this Court's procedural rules, the Court acknowledges the substantive finding in *Catholic Mutual* that a lack of privity between the original insured and the reinsured signifies that "as a general matter, [reinsurance] has no relevance [to] the underlying tort action." *Id*. But this argument has no place here and has been flatly rejected in other district courts: "The insurers have cited

no cases making this distinction under Rule [26(a)(1)(D)]." *U.S. Fire Ins. Co.*, *supra*, 244 F.R.D. at 642. Defendants fail to cite to any on-point case law within this jurisdiction, or any other federal court for that matter, holding opposite of a long line of federal cases drawing no meaning from Defendants' privity argument. Indeed, the District Court of Kansas in the *U.S. Fire Insurance Co.* matter adopted *National Union Fire Insurance*'s analysis, which remains the majority view across the federal judiciary to date: "… because reinsurers 'carry on an insurance business' and 'may be liable ... to indemnify [insurers] for payments made to satisfy the judgment,' reinsurance agreements fall within the plain language of the rule." *Id*. (citing *National Union Fire Ins. Co.*, *supra*, 116 F.R.D. at 84). Notably, the Court added, "as the *National Union* court concluded, the fact that reinsurers would pay the Insurers and not the insured directly is irrelevant, and such an argument is disingenuous in light of the fact that the same usually holds true for regular insurance policies, which are undoubtedly subject to the rule." *Id*. at 84 & n. 13. This Court, like nearly all others in federal district and circuit courts, agrees. In doing so, the Court rejects Defendants' argument that lack of privity between the City of San Diego and Wesco/Amtrust bars the discoverability of Defendants' reinsurance policy.

      Defendants' additional argument that the reinsurance policy is irrelevant and, therefore, does not merit production also ignores legal authority stressing that relevance is not an appropriate inquiry here. *Suffolk Fed. Credit Union*, *supra*, 270 F.R.D. at 142 (Rule 26(a)(1)(A)(iv) is "absolute" and "does not require any showing of relevance"); *Ivy Hotel San Diego, LLC*, *supra*, 2011 WL 13240367, at *5 ("Pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iv), reinsurance agreements are specifically subject to disclosure"). Equally glaring, Defendants fail to address the abundant legal authority in support of Rule 26(a)(1)(A)(iv)'s requirement that reinsurance policies *must* be produced as part of initial disclosures. The legal authority Defendants cites does not conclude that Rule 26 does not require disclosure of reinsurance policies as a routine discovery matter. Defendants' cited federal case law also does not substantively distinguish reinsurance policies from the insurance policies subject to initial disclosure under Rule 26(a). Instead, Defendants

attempt to write in those distinctions for the Court, as evidenced by its interpretation of *Ivy Hotel* and other related cases implicating bad-faith claims. But Defendants' efforts are misguided. The fact that bad-faith claims arose in the federal cases Defendants cite to does not signify that the courts ordered disclosure of a reinsurance policy *because* bad-faith claims were involved (and that the courts otherwise would not have ordered such disclosure). Indeed, none of the decisions Defendants cite to for this proposition state so. The matter is more straightforward than Defendants present and the Court joins in the majority of other federal courts' findings that Rule 26(a)(1)(iv) plainly requires the disclosure of reinsurance policies during the initial disclosures phase of litigation. The Rule's language is clear and need not be muddled in drawing distinctions without difference.

Finally, Defendants make an impossibility argument to preclude their production of the reinsurance policy; that is, even if Defendants were willing to produce the reinsurance policy, they are not able to because they are not the parties to the agreement. Given the Court's substantive findings above that the reinsurance policy is subject to disclosure to Plaintiffs, the Court hereby ORDERS Defendants to diligently work with the appropriate entities to obtain a copy of the reinsurance policy or, in the alternative, to request by Court-ordered subpoena the production of the reinsurance policy. Upon doing so, Defendants shall produce the reinsurance policy to Plaintiffs no later than Friday, July 17, 2020.

### IV.   CONCLUSION

As discussed, the Court GRANTS Plaintiffs' request for production of Defendants' reinsurance policy. Defendants are ORDERED to produce the reinsurance policy to Plaintiffs **no later than Friday, July 17, 2020**. In the event that Defendants fail to timely produce such policy, the Parties are ORDERED to jointly contact this Court's Chambers

/ / /

/ / /

/ / /

/ / /

1  **on or before Tuesday, July 21, 2020** to coordinate further proceedings on this dispute.
2       **IT IS SO ORDERED.**
3  Dated: July 2, 2020

                                              Hon. William V. Gallo
                                              United States Magistrate Judge